# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

```
FLUID EQUIPMENT INTERNATIONAL
LTD.,                              *
                                   *
     Plaintiff,                    *
                                   *
v.                                 *      No: 2:16-CV-150
                                   *
REDDY-BUFFALOES PUMP, INC., &      *
BUFFALOES FIRE PUMP, INC.;         *
                                   *
     Defendants.                   *
                                   *
                                   *
                                   *
                                   *
```

## ORDER

Before the Court is Defendants' Reddy-Buffaloes Pump, Inc. and Buffaloes Fire Pump, Inc. ("Defendants") Motion for Summary Judgment (Dkt. No. 21). Also before the Court is Plaintiff's Motion to Dismiss Defendants' Counterclaim (Dkt. No. 17). For the reasons stated below, Defendants' Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion to Dismiss Defendants' Counterclaim is **GRANTED**.

## BACKGROUND

This is the second of two lawsuits[1] before the Court arising from a contract between Plaintiff Fluid Equipment International, Ltd. ("FEI") and Defendants Reddy-Buffaloes Pump, Inc., and Buffaloes Fire Pump, Inc. First Lawsuit, 2:15-CV-74, Dkt. No. 1. Here, FEI, as assignee of Zener Fire and Security, LLC ("Zener"), seeks to recover any losses Zener incurred as a purported third-party beneficiary of the underlying contract.

Plaintiff FEI is a U.K.-based manufacturer and distributor of fire-protection equipment. First Lawsuit, CV 215-74, Dkt. No. 65-1 ¶ 3. Defendants are Baxley, Georgia-based manufacturers of custom-made industrial fire pumps. First Lawsuit, CV 215-74, Dkt. No. 17 ¶ 7. They were founded by Dr. Y.R. Reddy ("Dr. Reddy"). First Lawsuit, 2:15-CV-74, Dkt. No. 65-2. Zener is a leading fire and security company based in the United Arab Emirates, who purchases industrial fire and securities equipment from various global vendors. Dkt. No. 28 p. 2.

In late 2013, FEI and Defendants began discussing FEI's potential purchase of fire equipment. Dkt. No. 28 p. 3. At an in-person meeting at Defendants' offices in Baxley, Georgia, attended by representatives from Zener, the parties negotiated terms for the purchase of the relevant equipment. Dkt. No. 28.

---

[1] The first lawsuit was filed in *Fluid Equipment International, LTD. v. Reddy-Buffaloes Pump, Inc. and Buffaloes Fire Pump, Inc.*, CAFN: 2:15-cv-74 (hereinafter "First Lawsuit").

AO 72A
(Rev. 8/82)

p. 3. On November 14, 2014, FEI submitted a purchase order ("the Order") consisting of three subparts, one of which ordered diesel-driven fire pumps. First Lawsuit, CV 215-74, Dkt. No. 65-3. The pumps were intended for Zener. First Lawsuit, CV 215-74, Dkt. No. 65 p. 3. The Order stated that FEI was to pick up the pumps from Defendants' Baxley facility 18-20 business weeks after prepayment, with the latest pick-up date set at twenty-two weeks after prepayment. Id. The Order also stated that the ultimate port of destination for the pumps was Jeddah, Saudi Arabia. Id. The Order lists Zener's name and address next to the heading "ship to." Dkt. No. 27-3. The Order repeats the "ship to" heading several times throughout the agreement. Id.

Defendants brought a motion for summary judgment, alleging that Zener does not have standing to bring suit against Defendants, and therefore that Plaintiff—as Zener's assignee—does not have standing to bring suit. Dkt. No. 21. This motion is ripe for disposition.

**LEGAL STANDARD**

**A. Defendant's Motion for Summary Judgment is Denied.**

At the summary judgment stage, it is the Court's responsibility "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

AO 72A
(Rev. 8/82)

(1986)) (internal quotation marks omitted). In making its determinations, the Court has taken due care to avoid weighing conflicting evidence or making credibility determinations, and to resolve conflicting evidence and draw evidentiary inferences in favor of the Plaintiff as the nonmoving party.

The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion for summary judgment and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes demonstrate absence of any genuine issue of material fact. Taylor v. Espy, 816 F. Supp. 1553, 1556 (N.D. Ga. 1993) (citation omitted). If it shows that there is insufficient evidence supporting the nonmoving party's case, the moving party has satisfied its burden. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The burden then shifts to the nonmovant to demonstrate a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmovant may meet this burden by showing that the record contains "supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Alternatively, the nonmovant "may come forward

AO 72A
(Rev. 8/82)

with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. But should the nonmovant instead attempt to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

**DISCUSSION**

Defendants now move for summary judgment regarding FEI's breach of contract claims on behalf of Zener. Dkt. No. 21. Defendants argue that Zener cannot be a third-party beneficiary to the agreement between FEI and Defendants. Id.

"The question of whether, for standing purposes, a non-party to a contract has a legally enforceable right is a matter of state law." AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1360 (11th Cir. 2007). As such, the Court applies Georgia law because the events that gave rise to this litigation occurred in Georgia.

In Georgia, a third-party beneficiary contract exists where "the promisor engages to the promisee to render some performance to a third person." LDH Prop. v. Morgan Guaranty Tr. Co., 243 S.E.2d 278, 279 (Ga. Ct. App. 1978). A party's status as a third-party beneficiary is contingent upon the "intention of the contracting parties to benefit the third party." Am. Fletcher

5

Mortg. Co. v. First Am. Inv. Corp., 463 F. Supp. 186, 195 (N.D. Ga. 1978). This intention must be clear. Stewart v. Gainesville Glass Co., 206 S.E.2d 857, 860 (Ga. Ct. App. 1974), aff'd 212 S.E.2d 377 (Ga. 1975) ("It must clearly appear from the contract that it was intended for the plaintiff's benefit, as, for example, in a trust or an insurance policy."). This intention must also be identifiable on the face of the contract, and it must be shared by both parties to the contract. CDP Event Servs., Inc. v. Atcheson, 656 S.E.2d 537, 539 (Ga. Ct. App. 2008).

Here, the Purchase Orders contain phrases that raise the question of whether Zener was an intended beneficiary. Several invoices list Zener by name on the face of the contract, reading "Ship To: Zener Fluid, Jeddah Port, K.S.A." Dkt. No. 27-2 p. 58, 59, 60, 65. Yet there is no explanatory language on the face of the invoices that give the Court guidance on how the inclusion of "Zener Fluid" was intended by the contracting parties.

Plaintiffs and Defendants disagree on how Zener's inclusion in the Purchase Orders should be interpreted. Defendants argue that the inclusion of "Zener Fluid" merely indicates where the pumps were being shipped. Dkt. No. 30 p. 3. But Plaintiffs argue that this language reflects the parties' mutual intent to make Zener a third party beneficiary. Dkt. No. 28 p. 6. It is not this Court's role to identify the better of the two conflicting

AO 72A
(Rev. 8/82)

arguments. Tippens v. Celotex Corp., 805 F.2d 949, 952-53 (11th Cir. 1986). Rather, it is this Court's obligation to identify whether any material issue of fact should be addressed at trial.

In considering a motion for summary judgment that implicates a contract, the Court must first determine whether the language of the contract is clear and unambiguous. Grange Mut. Cas. Co. v. Woodard, 861 F.3d 1224, 1230-31 (11th Cir. 2017). If it is, the Court will enforce the contract according to its clear terms, looking only to the contract itself for meaning. Id. But if the contract is ambiguous in any respect, the Court applies rules of contract construction to resolve that ambiguity. Id. After applying those rules of construction, the Court determines whether any ambiguity remains. Id. Where the parties' intention is not resolved by the application of the rules of contract construction or by parol evidence, a question of fact precludes summary judgment. Krogh v. Pargar, LLC, 625 S.E.2d 435, 440 (Ga. Ct. App. 2005). "[A] jury must then resolve the ambiguity." Grange Mut. Cas. Co. v. Woodard, 861 F.3d 1224, 1230-31 (11th Cir. 2017). In other words, the Court (with the help of a jury, if needed) must first divine the parties' intentions and then determine whether the intentions were clearly communicated on the face of the contract. Here, only if the Court can first determine that the parties intended to create a third-party beneficiary relationship with Zener, and

7

second, determine that this intention was clearly communicated on the face of the contract, may the Court grant this motion for summary judgment. The Court will conduct each step of the analysis in turn, beginning by turning to the question of the parties' intentions.

In the case at hand, the incorporation of "Zener Fluid" in the "Ship To" line of the Purchase Orders is ambiguous. Dkt. No. 27-2 pp. 58, 59, 60, 65. It is unclear from a plain reading of the contract itself whether "Ship To: Zener Fluid" refers to Zener as a location, or as a party to the contract. As such, the court will apply rules of contract construction in an attempt to resolve this ambiguity.

A cardinal principle of contract construction is that language must be afforded "its literal meaning and plain ordinary words given their usual significance." Unified Gov't of Athens-Clarke Cty. v. McCrary, 635 S.E.2d 150, 152 (Ga. 2006). "[N]o ambiguity exists where, examining the contract as a whole and affording the words used therein their plain and ordinary meaning, the contract is capable of only one reasonable interpretation." Capital Color Printing, Inc. v. Ahern, 661 S.E.2d 578, 583 (Ga. Ct. App. 2008) (citations and quotation marks omitted).

Plaintiff argues that the phrase "Ship To: Zener Fluid" represents parties' shared intent that Zener be a third-party

beneficiary to the contract. This argument is misguided. Under Georgia law, "unless the contract indicates otherwise, 'we generally accept that contractual terms carry their ordinary meanings.'" <u>Lafarge Bldg. Materials, Inc. v. Thompson</u>, 763 S.E.2d 444, 446 (Ga. 2014) (citing <u>Archer Wester Contractors, Ltd. v. Estate of Mack Pitts</u>, 735 S.E.2d 772 (Ga. 2012)). The phrase "Ship To" has an ordinary meaning of designating an address or location, not a third-party beneficiary to a contract. It therefore is a reasonable construction of the contract that "Ship To: Zener Fluid, Jeddah Port, K.S.A." reflected the parties' intention to designate the destination of a shipment rather than identify a party to the contract. Moreover, the argument that "Ship to: Zener Fluid" designates Zener a third-party beneficiary is dubious because Zener Fluid is not the name of the alleged third-party beneficiary; it is rather "Zener Fire and Security, LLC." Dkt. No. 27-11 p. 2. The Court believes that if the parties intended to designate a third party beneficiary, they would likely have been more careful to ensure that the name of that third party was correctly noted on the contract. But the Court notes that this is not the only reasonable interpretation. See <u>Starett v. Commercial Bank of Ga.</u>, 486 S.E.2d 923 (Ga. Ct. App. 1997) (finding that identifying a bank by name and a loan by its outstanding balance

on the face of a settlement agreement showed the parties' intent to make a bank a third-party beneficiary).

Second, Plaintiff argues that the language "meeting at RB Pump Co. Offices" evinces the intent of the parties to incorporate the discussions at that meeting into the contract. Dkt. No. 30 p. 6. But it is not clear from the plain language of the contract that this is the meaning of that phrase. Taken in context, this statement appears in the "Reference" line. First Lawsuit, 2:15-CV-74, Dkt. No. 66-3 p. 3. As a whole, that line lists "e-mail correspondence / meeting at RB Pump Co. Offices / (revised) quotations"—items that generally describe the subject matter of the email, rather than express a manifest intention to incorporate the items discussed at that meeting into the Purchase Order. Id. Finally, the email is addressed "Dear Sirs, I would like to submit our purchase order for the required fire pump sets, *as described hereafter*." Id. (emphasis added). The language "as described hereafter" clarifies that the purchase order comes *after* this salutation. Id. As such, the line "meeting at RB Pump Co. Offices" can be construed as preceding the purchase order, and therefore not part of it.

But even the meaning of the contract and construing the contract as a whole do not make the parties' intentions crystal clear. Because construing the contract using ordinary meaning does not provide the Court with only one reasonable

interpretation of the contract, the Court therefore considers whether it is appropriate to examine parol evidence in the case at hand. The cardinal rule of contract construction is to ascertain the intention of the parties by examining the contract as a whole. McAbee Const. Co. v. Ga. Kraft Co., 343 S.E.2d 513, 515 (Ga. Ct. App. 1986). As such, the court is generally permitted to use parol evidence to resolve ambiguities in contracts. See OCGA § 13-2-2(1) (allowing parol evidence to explain latent or patent ambiguities in a contract). But "[p]arol evidence cannot confer third-party beneficiary status where the contract itself fails to do." CDP Event Servs., Inc. v. Atcheson, 656 S.E.2d 537, 540 (Ga. Ct. App. 2008) (citation omitted).

Plaintiff asks the Court to go beyond the face of the contract and consider parol evidence to clarify the parties' intentions with respect to Zener Fluid. FEI asks that the language on the Purchase Order ("Ship to: Zener Fluid") be interpreted in light of the language at the top of the final Purchase Order reflecting the parties' intent to incorporate matters discussed in a "meeting at RB Pump Co. Offices." Dkt. No. 28 p. 6; First Lawsuit, 2:15-CV-74, Dkt. No. 66-3 p. 3. FEI argues that this meeting was attended by representatives of Zener and arranged for the purpose of negotiating the terms of the contract, demonstrating that Zener was the "driver of all

AO 72A
(Rev. 8/82)

negotiations and the party empowered with final approval over the terms of the sale." Dkt. No. 28 p. 7.

Georgia courts sometimes consider parol evidence in deciding whether a third party has standing to sue on a contract. See Anderson v. Atlanta Comm. for Olympic Games, Inc., 537 S.E.2d 345 (Ga. 2000) (examining the contract and deposition testimony to find no third party beneficiary contract). But this is not the norm. See U.S. Foodservice, Inc. v. Bartow Cty. Bank, 685 S.E.2d 777, 779 (Ga. Ct. App. 2009) (examining only the language of the contract to find no intent to confer third-party beneficiary status); Perry Golf Course Dev., LLC v. Hous. Auth. of City of Atlanta, 670 S.E.2d 171, 175 (Ga. Ct. App. 2008) (same); Armor Elevator Co. v. Hinton, 443 S.E.2d 670, 673 (Ga. Ct. App. 1994) (same); CDP Event Servs., Inc. v. Atcheson, 656 S.E.2d 537, 540 (Ga. Ct. App. 2008) (finding that "the merger clause in the instant case precludes our consideration of parol evidence").

Here, the Court finds it appropriate to look to parol evidence to understand the intent of the parties, because Georgia courts have held that a party's status as a third-party beneficiary is contingent upon the "intention of the contracting parties to benefit the third party, and *this intention is determined by construction of the contract as a whole*." Am. Fletcher Mortg. Co. v. First Am. Inv. Corp., 463 F. Supp. 186,

195 (N.D. Ga. 1978) (emphasis added). The Court considers the parol evidence because it finds the contract is ambiguous, even after applying the canons of construction.

But examining parol evidence does not clearly demonstrate intention by the parties to render performance to Zener Fluid. The parol evidence indicates that representatives of Zener attended a meeting "to discuss the negotiation of this contract." Dkt. No. 27-1, Reddy Dep. 52:5-15. These representatives included the director of Zener, the director's assistant, and a "purchasing guy" from Zener. Id. at 58:8-17. FEI characterizes Zener's prominent representation in the meeting as evidence of its role as the "driver of all negotiations and the party empowered with final approval over the terms of the sale." Dkt. No. 28 p. 7. But Defendants present evidence to the contrary. Dr. Reddy did not perceive these individuals as "end users" who he "need[ed] to please" in the hopes that they "buy again and again," but rather one of three "middle men" who "come and go." Dkt. No. 27-1, Reddy Dep. 127: 17-25, 128:1-25, 129:1-7. This testimony indicates that Dr. Reddy did not feel bound to please Zener, or view Zener as the final word on the project, but rather viewed the end user as the party to whom he answered. Yet this testimony does not foreclose the possibility that Dr. Reddy also felt compelled to benefit Zener, too—even if to a lesser degree than the end user.

AO 72A
(Rev. 8/82)

Georgia law and this Court's analysis require that in order to confer third-party beneficiary status, the contract must show on its face that the parties to the contract clearly intended to confer such a benefit. But the four corners of the contract, applying canons of construction, and examining parol evidence do not clearly express the intention of the parties. The contract therefore fails to communicate that intention clearly.

Having determined that the contract is ambiguous, applied the canons of construction, examined parol evidence, the Court determines that the contract does not show on its face that the parties to the contract clearly intended to confer a benefit on Zener Fluid. Because the parties' intention was not resolved by the application of the rules of contract construction or by parol evidence, a question of fact precludes summary judgment. Krogh v. Pargar, LLC, 625 S.E.2d 435, 440 (Ga. Ct. App. 2005). "[A] jury must then resolve the ambiguity." Grange Mut. Cas. Co. v. Woodard, 861 F.3d 1224, 1230-31 (11th Cir. 2017).

There is therefore a genuine issue of material fact regarding whether Zener was the intended beneficiary of the agreement. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923,

14

AO 72A
(Rev. 8/82)

933-34 (11th Cir. 1989) (citation omitted). As such, Defendants' Motion for Summary Judgment will be denied.

**B. Plaintiff's Motion to Dismiss Defendants' Counterclaim is Granted.**

Defendants filed their Answer and Counterclaim in this case on December 16, 2016. Dkt. No. 12. Defendants' sole counterclaim alleged abusive litigation under O.C.G.A. Section 51-7-81. Dkt. No. 12 p. 11. Plaintiffs filed a motion to dismiss the counterclaim on January 3, 2017. Dkt. No. 17. Plaintiffs noted that a claim under this article "requires the *final termination of the proceeding* in which the alleged abusive litigation occurred . . . ." See O.C.G.A. § 51-7-84(b) (emphasis added). This litigation has not terminated. As such, Plaintiffs asserted that Defendants' counterclaim is not ripe and should therefore be dismissed. Dkt. No. 17 p. 3. Defendants agreed; they consented to the Plaintiff's motion to dismiss Defendant's counterclaim. Dkt. No. 18 p. 2.

In their Response Consenting to Plaintiff's Motion to Dismiss Defendant's Counterclaim, Defendants asked the Court to defer ruling on Plaintiff's motion to dismiss the counterclaim until Defendants could file a motion for leave to amend their answer and strike the counterclaim. Dkt. No. 18. The Court has deferred. Though Defendants alleged that their motion to amend would be filed within one day, no motion has yet been filed.

AO 72A
(Rev. 8/82)

Dkt. No. 18 ("Within one day, Defendants will file a motion for leave to amend their answer by striking the counterclaim.").

As such, the Court will no longer defer granting the uncontested motion to dismiss Defendants' counterclaim. It is uncontested that Defendants' counterclaim is premature, as it was brought before the conclusion of the underlying litigation. See Jacobs v. Littleton, 525 S.E.2d 433, 435 (Ga. Ct. App. 1999) (holding that an "action for abusive litigation pursuant to OCGA § 51-7-80 et seq. cannot be brought until after the final termination of the proceeding."). Plaintiff's Motion to Dismiss Defendants' Counterclaim will therefore be granted.

## CONCLUSION

For the reasons set forth above, it is hereby ordered that Defendants' Reddy-Buffaloes Pump, Inc. and Buffaloes Fire Pump, Inc. Motion for Summary Judgment (Dkt. No. 21) is **DENIED** and that Plaintiff's Motion to Dismiss Defendants' Counterclaim (Dkt. No. 17) is **GRANTED**.

**SO ORDERED**, this 29TH day of September, 2017.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA